UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -X
:
THE DEDALUS FOUNDATION,           :     09 Civ. 2842 (LAP)
                                  :
               Plaintiff,         :     MEMORANDUM AND
                                  :     ORDER
     v.                           :
                                  :
JOAN BANACH,                      :
                                  :
               Defendant.         :
                                  :
- - - - - - - - - - - - - - - - -X

LORETTA A. PRESKA, Chief U.S. District Judge

On March 25, 2009, Plaintiff the Dedalus Foundation, Inc. ("Dedalus") filed a complaint in federal court against Joan Banach ("Banach") alleging, inter alia, conversions and improper sales of works by the late abstract expressionist artist Robert Motherwell. On the same day Banach filed her own claims in New York state court for, inter alia, wrongful termination against the Dedalus Foundation.

Six of Dedalus's seven claims are brought under New York state law.[1] The seventh claim alleges a violation of

---

[1] Specifically, Dedalus alleges breach of fiduciary duty as a member of the Dedalus Board, replevin, unjust enrichment, misappropriation and diversion of a corporate opportunity, conversion, and breach of fiduciary duty as an employee. (Compl. ¶¶ 52-79.)

1

18 U.S.C § 1030, also known as the Computer Fraud and Abuse Act ("CFAA"). (Compl. ¶¶ 80-84.)

Banach now moves this Court to decline the exercise of supplemental jurisdiction over the six state law claims and, second, to dismiss Dedalus's CFAA claim for failure to state a claim and for failure to plead facts sufficient to put Banach on notice of a CFAA violation. (Def.'s Mem. of Law 2.) For the reasons that follow, the Court DENIES Banach's motion to dismiss Dedalus's CFAA claim but declines to exercise supplemental jurisdiction over the remaining state law claims.

## I.  Background

Robert Motherwell formed the Dedalus Foundation, originally named the Motherwell Foundation, in March of 1981 to manage Motherwell's art for public exhibition and to engage in certain charitable, research, and educational activities. (Compl. ¶¶ 2, 5.) Banach began working as Motherwell's secretary that same year and eventually became a "curator" with control over Motherwell's inventory of approximately ten thousand original works. (Compl. ¶¶ 7, 9.) After Motherwell's death in 1991, Banach became a member of the Dedalus Board of Directors. (Compl. ¶ 7.)

Starting in 1999, Banach often worked from her home on two computers purchased and provided by Dedalus. (Compl. ¶ 44.)

Dedalus alleges that Banach misappropriated at least ten Motherwell works during her tenure at Dedalus and attempted to sell or consign, or did sell or consign, at least some of them. (Compl. ¶ 29.)  Banach allegedly used the two computers at her home to communicate with individuals and entities outside of New York State, including other parties to her consignments and sales of Motherwell works. (Compl. ¶ 45.)  Dedalus terminated Banach's employment in 2008 and informed her that she was no longer authorized to use the computers. (Compl. ¶ 47.) Dedalus alleges that Banach nevertheless intentionally removed all data on the hard drives before returning the computers, included data relevant to this dispute. (Compl. ¶¶ 49-50.)  Dedalus subsequently attempted to recover the lost data through forensic investigation at a cost of approximately $30,000. (Compl. ¶ 84.)

## II.   Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949

3

(2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 554, 570 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555). In assessing whether a plaintiff has met this standard, the Court must "constru[e] the complaint liberally, accepting all factual allegations . . . as true, and drawing all reasonable inferences in the plaintiff's favor." Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008) (internal quotation omitted).

The Court will first consider the sufficiency of the CFAA claim before considering whether to exercise supplemental jurisdiction over the state law claims.

**III. The CFAA Claim**

Dedalus asserts that Banach's removal and destruction of data from the two computers allows it to claim relief under the Computer Fraud and Abuse Act ("CFAA").[2] While the CFAA is primarily a criminal statute, § 1030(g) provides that "[a]ny person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and

---

[2] Congress has amended the CFAA several times, most recently in 2008. See Title II—Identity Theft Enforcement and Restitution Act, Pub. L. No. 110-326, 122 Stat. 3560.

4

injunctive relief or other equitable relief" but "only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i)." 18 U.S.C. § 1030(g).  For the purposes of this motion, Banach accepts that Dedalus has satisfied subclause (I) by alleging a loss of at least $30,000 from the investigation of the deleted hard drives. See 18 U.S.C. § 1030(c)(4)(A)(i)(I) ("loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value"); (Def.'s Mem. of Law 11 n.3.)

Dedalus's Complaint does not specify a particular CFAA provision, but the substance of the allegations and the parties' memorandums of law indicate that Dedalus is asserting violations of 18 U.S.C. § 1030(a)(5)(A), (a)(5)(B), and (a)(5)(C).  Sections 1030(a)(5)(A)-(C) provide for penalties for whoever

> (A) knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer;

>(B) intentionally accesses a protected computer without authorization, and as a result of such conduct, recklessly causes damage; or
>
>(C) intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage and loss.

Banach argues that Dedalus has failed to state a claim under §§ 1030(a)(5)(B) and (a)(5)(C) because Dedalus has not alleged that "Banach's conduct used or affected interstate commerce or communication." (Def.'s Mem. of Law 2.) Banach also argues that Dedalus has failed to allege the knowing "transmission of a program, information, code, or command" as required by § 1030(a)(5)(A). (Def.'s Reply Mem. of Law 8 n.3.) Finally, Banach argues that Dedalus has failed to allege facts sufficient to put Banach on notice of any alleged CFAA violation. (Def.'s Mem. of Law 2.) For the reasons stated below, the Court finds that Dedalus has sufficiently stated a claim under the CFAA.

### A.   18 U.S.C. § 1030(a)(5)(B) and (a)(5)(C)

Banach argues that Dedalus has failed to allege that Banach accessed a "protected computer" within the meaning of the statute. The CFAA defines a "protected computer"

6

as, inter alia, a computer "which is used in or affecting interstate or foreign commerce or communication, including a computer located outside the United States that is used in a manner that affects interstate or foreign commerce or communication of the United States." 18 U.S.C. § 1030(e)(2)(B). Courts have found that computers used to conduct business across state lines were protected computers. See Patrick Patterson Custom Homes, Inc. v. Bach, 586 F. Supp. 2d 1026, 1033-34 (N.D. Ill. 2008) ("[I]t suffices to state the computer was used for the business and the business operated in two different states.") (citing Modis, Inc. v. Bardelli, 531 F. Supp. 2d 314, 319 (D. Conn. 2008)); Nordstrom Consulting, Inc. v. M&S Techs., Inc., No. 06 C 3234, 2008 WL 623660, at *12 (N.D. Ill. Mar. 4, 2008). Courts have also found that computers that access the Internet through programs such as email qualify as protected computers. See Continental Group, Inc. v. KW Property Management, LLC, 622 F. Supp. 2d 1357, 1370 (S.D. Fla. 2009) ("A connection to the internet is 'affecting interstate commerce or communication.'"); Paradigm Alliance, Inc. v. Celeritas Techs., LLC, 248 F.R.D. 598, 602 n.5 (D. Kan. 2008) (citing Reno v. ACLU, 521 U.S. 844, 850 (1997), in concluding that a "computer that provides

7

access to worldwide communications would satisfy the element of interstate communications").

Here, Dedalus alleges that Banach used the two computers "to regularly conduct Foundation business and communicate via the Internet with individuals and entities, including those residing outside of New York State." (Compl. ¶ 81.) Accepting these allegations as true for the purposes of this motion, Dedalus has plausibly stated a claim that the computers in question were "protected" within the meaning of 18 U.S.C. § 1030(e)(2)(B). See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

Banach argues that the "alleged unauthorized conduct had no nexus with interstate activity" and claims that the CFAA does not "encompass conduct that damaged or caused loss to a computer when it was either off-line, not connected to a network server or not otherwise engaged in interstate activity." (Def.'s Mem. of Law 7, 9.) The plain text of the statute, however, requires that the computer—not the accessor's conduct—have a connection with interstate commerce. See United States v. Mitra, 405 F.3d 492, 496 (7th Cir. 2005) (Easterbrook, J.) ("[T]he statute does not ask whether the person who caused the damage acted in interstate commerce; it protects computers (and

8

computerized communication systems) used in such commerce, no matter how the harm is inflicted.").

Banach's reliance on Patrick Patterson Custom Homes, Inc. v. Bach, 586 F. Supp. 2d 1026 (N.D. Ill. 2008), is misplaced. The plaintiff in that case alleged that the defendant deleted files from a home-office laptop with the help of "shredding" software. See Patrick Patterson, 586 F. Supp. 2d at 1035. While Banach is correct that the court initially found that these allegations did not state a claim under the CFAA, she fails to note that the court was analyzing a different section of the statute.[3] See id. at 1033-34. When the court subsequently analyzed the allegations under § 1030(a)(5)(A)(iii)—the predecessor to sections 1030(a)(5)(B) and (a)(5)(C)[4]—it held that the

---

[3] Moreover, even assuming that Dedalus was attempting to state a claim under section 1030(a)(2)(C)—the section at issue in the portion of Patrick Patterson that Banach cites—the Court notes that the 2008 amendments to the CFAA explicitly removed the language requiring that a defendant's "conduct involve[] an interstate or foreign communication." See Identity Theft Enforcement and Restitution Act of 2008, Pub. L. No. 110-326, 122 Stat. 3560, § 203 ("ENSURING JURISDICTION OVER THE THEFT OF SENSITIVE IDENTITY INFORMATION").

[4] Former § 1030(a)(5)(A)(iii) established a CFAA violation when an individual "intentionally accesse[d] a protected computer without authorization, and as a result of such conduct, cause[d] damage." This language, aside from the addition of "recklessly" in the current § 1030(a)(5)(B) and "loss" in § 1030(a)(5)(C), tracks both sections. See 18 U.S.C. § 1030(a)(5); Identity Theft Enforcement and Restitution Act of 2008 § 204(a)(1).

plaintiff had indeed alleged facts sufficient to state a claim under the CFAA. See id. at 1035. In sum, the Court finds that the allegations in the Complaint, when viewed in a light most favorable to Dedalus, sufficiently state a claim under §§ 1030(a)(5)(B) and (a)(5)(C).

### B.   18 U.S.C. § 1030(a)(5)(A)

Dedalus argues that it also anticipates being able to prove that Banach violated § 1030(a)(5)(A). (P.'s Mem. of Law 10 n.6.)  Banach argues that Dedalus has failed to plead this claim sufficiently because it has failed to allege any conduct amounting to the "transmission of a program, information, code, or command." (Def.'s Reply Mem. of Law 8 n.3.)

The Seventh Circuit weighed in on the meaning of the word "transmission" in Int'l Airport Ctrs., L.L.C. v. Citrin, 440 F.3d. 418 (7th Cir. 2006). The defendant in that case, a former employee of the plaintiff, a real estate company, loaded a secure-erasure program onto his company laptop in order to destroy incriminating data. Int'l Airport Ctrs., 440 F.3d at 419. The Court explained that merely pressing the delete key on a computer does not remove data but rather "removes the index entry and pointers to the data file so that the file appears no

longer to be there." Id.  "Such deleted files," wrote the Court, "are easily recoverable." Id.  Even though pressing the delete key technically "transmits a command" to the computer, the Court cautioned that "it might be stretching the statute too far (especially since it provides criminal as well as civil sanctions for its violation) to consider any typing on a computer keyboard to be a form of 'transmission' just because it transmits a command to the computer." Id.  The alleged use of a secure-erasure program, on the other hand, sufficiently stated a claim under the statute because the defendant had to have transmitted the program to the computer. See id.; Arience Builders, Inc. v. Baltes, 563 F. Supp. 2d 883, 884 (N.D. Ill. 2008) (finding that the plaintiff satisfied pleading requirements when the complaint alleged conduct that "constituted a code and/or command by [defendant] which was unauthorized and caused deletion of data and/or damage to [p]laintiff's protected computer and/or the described computer data stored therein").

   While Dedalus alleges that Banach "knowingly and intentionally caused the removal and destruction of all relevant data on both of the computers' hard drives," "wiped clean" the drives, and "intentionally erased and destroyed" critical data, it does not explicitly allege the

11

"transmission of a program, information, code, or command." 18 U.S.C. § 1030(a)(5)(A); (Compl. ¶ 83.) The language used to describe the "irretrievabl[e] wiping" and "destruction" of data on the hard drives, however, leads the Court reasonably to infer that Dedalus is alleging that Banach did more than merely hit the delete button. (Compl. ¶¶ 49, 83.) In order actually to erase and destroy data, Banach must have transmitted a program or command, either through the physical insertion of a disc or the downloading of a program from the Internet. See id. at 420 (finding no difference, for purposes of liability under the statute, between destruction of data from a physical medium and from a virus transmitted via the Internet). Therefore, Dedalus has plausibly stated a claim under § 1030(a)(5)(A). See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009); Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008).

### C. Notice Pleading

Dedalus has alleged facts sufficient to put Banach on notice of the CFAA claim. A plaintiff asserting a CFAA claim must only allege the required elements pursuant to Rule 8(a)(2)'s notice pleading standard, not Rule 9(b)'s heightened pleading standard. Patrick Patterson, 586 F. Supp. 2d at 1031. Here, Dedalus has alleged the time-frame

for Banach's conduct; her lack of authority to tamper with the computers; the specific computer hard drives that she targeted; the data that she destroyed (all of the data on the drives); what information that data contained; and the costs incurred in the resulting forensic investigation. (Compl. ¶¶ 44-51, 81-84.)  These facts are sufficient to raise Dedalus's right to relief above the speculative level and to put Banach on notice of the CFAA claim. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

## IV. Supplemental Jurisdiction

A district court with original jurisdiction in a civil action has "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).  A district court, however, may "decline to exercise supplemental jurisdiction over a claim" if "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c)(2).  Once the court determines that § 1367(c)(2) applies, "the exercise of discretion is informed by whether [dismissing] the pendent state claims comports with the underlying objective

13

of most sensibly accommodat[ing] the values of economy, convenience, fairness, and comity." Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 446 (2d Cir. 1998) (internal quotation omitted).

Here, the Court could assert supplemental jurisdiction over Dedalus's state law claims because they are part of the same case or controversy as the federal CFAA claim. Both the state law claims and the CFAA claim arise out of Banach's employment and activities at Dedalus, alleged misappropriation of artwork, and subsequent termination. The Court declines to exercise supplemental jurisdiction over the state law claims, however, because they substantially predominate over the CFAA claim.

### A.   28 U.S.C. § 1367(c)(2)

Declining jurisdiction under 28 U.S.C. § 1367(c)(2) is appropriate when "permitting litigation of all claims in the district court can accurately be described as allowing a federal tail to wag what is in substance a state dog." Luongo v. Nationwide Mut. Ins. Co., No. 95 Civ. 3190 (MBM), 1996 WL 445365, at *5 (S.D.N.Y. Aug. 7, 1996) (quoting Borough of West Mifflin v. Lancaster, 45 F.3d 780, 789 (3d Cir. 1995)).  State law claims can predominate "in terms of proof, of the scope of the issues raised, or of the

14

comprehensiveness of the remedy sought." United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966).  A court will consider "whether the state law claims are more complex or require more judicial resources to adjudicate or are more salient in the case as a whole than the federal law claims." OccuNomix Intern. LLC v. North Ocean Ventures, Inc., No. 03 Civ. 6047(GEL), 2003 WL 22240660, at *1 (S.D.N.Y. Sept. 30, 2003) (quoting Diven v. Amalgamated Transit Union Int'l & Local 689, 38 F.3d 598, 601 (D.C. Cir. 1994)) (declining to exercise supplemental jurisdiction where "twelve of the thirteen claims asserted in the complaint [were] state law claims describing a multitude of business torts," and the sole federal claim involved allegations that the defendants deleted e-mails from a database after a transaction).

In the instant case, the CFAA claim is merely "an appendage" to Dedalus's state law claims, which form the "real body of the case." Nichols v. Washington Mut. Bank, No. 07-CV-3216 (JG)(VVP), 2007 WL 4198252, at *10 (E.D.N.Y. Nov. 21, 2007) (quoting City of New Rochelle v. Town of Mamaroneck, 111 F. Supp. 2d 353, 371 (S.D.N.Y. 2000)).  The CFAA claim involves a single allegation—the erasing of the two hard drives—that occurred after Dedalus terminated Banach's employment.  The CFAA claim will likely involve

limited discovery and analysis of the narrow legal issue of whether Banach accessed a protected computer without authorization and caused damage to the hard drives. In contrast, Dedalus's six state law claims revolve around allegations that Banach breached her fiduciary duties and misappropriated Motherwell's artwork. These allegations focus on a much longer time span than the CFAA claim and are likely to involve extensive discovery. The state law claims will also require legal analysis distinct from the CFAA claim. These state law claims are at the heart of this case and substantially predominate over the CFAA claim. See Contemporary Services Corp. v. Hartman, No. 08-02967 AHM (JWJx), 2008 WL 3049891, at * (C.D. Cal. 2008) (declining to exercise supplemental jurisdiction over state law claims for breach of fiduciary duty, conversion, and fraudulent misrepresentation because these claims involved "a broader scope of issues and proof" than the single CFAA claim).

Dedalus's argument that there is "substantial interplay" between the federal and state claims is unavailing. (Pl.'s Reply Mem. of Law 14-17.) Dedalus argues that the seven claims in the Complaint form a single two-pronged scheme to defraud Dedalus and that Banach will assert the same defense for each of the prongs. (Pl.'s

Reply Mem. of Law 15.)  The first six state law claims, however, are not necessary to establish the CFAA violation alleged in the seventh claim.  Contrary to Dedalus's arguments, it need not establish that Banach was motivated by the events comprising the first six claims in order to make out a violation 18 U.S.C. § 1030(a)(5).  See United States v. Willis, 476 F.3d 1121, 1125 (10th Cir. 2007) (holding that a plain reading of the CFAA dictated that the requisite intent to prove a violation of § 1030(a)(2)(C), which contains the same "intentionally accesses a computer without authorization" language as section 1030(a)(5), was not the intent to defraud but the intent to obtain unauthorized access of a protected computer).

Dedalus's argument that Banach will assert the same defense of "it's my property" for the state and federal claims is similarly unavailing. (Pl.'s Mem. of Law 16-17.) While it may be true that Banach will claim ownership of the Motherwell artworks and the hard drive data, the two issues are distinct.  Her ownership of the artwork is not needed to establish a defense to the CFAA claim.  There is therefore no substantial interplay between the CFAA claim and the state law claims.

### B. Judicial Economy, Convenience, Fairness, and Comity

The values of economy, convenience, fairness, and comity are promoted by declining supplemental jurisdiction. See Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 446 (2d Cir. 1998). The parties have not proceeded beyond the initial stages of litigation before this Court, and an extensive factual record does not yet exist. Resolution of the state law issues in the concurrently-filed state court action would not prejudice either party. As discussed above, Dedalus's argument that it will be prejudiced unless a jury hears "the full context" of Banach's two-pronged fraud is without merit. Finally, adjudication of the issues in state court will avoid "[n]eedless decisions of state law" in the interest of comity and will promote justice "by procuring . . . a surer-footed reading of applicable law." United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966). Notably, Dedalus has not countered Banach's assertion that some of the state law claims raise novel issues of state law. (Def.'s Mem. of Law 8); cf. Waterman v. Transport Workers' Union Local 100, 8 F. Supp. 2d 363, 369 n.2 (S.D.N.Y. 1998) ("One reason to retain jurisdiction is if the outcome of the claim is plain.") (citing Brazinski v.

Amoco Petroleum Additives Co., 6 F.3d 1176, 1182 (7th Cir. 1993)).

## V. CONCLUSION

For the foregoing reasons, Banach's motion to dismiss is DENIED as to Dedalus's Seventh Cause of Action. The Court declines to exercise supplemental jurisdiction over the remaining state law claims and therefore dismisses without prejudice Dedalus's First, Second, Third, Fourth, Fifth, and Sixth Causes of Action.

SO ORDERED:

DATED:     New York, New York
           October 15, 2009

*Loretta A. Preska*
LORETTA A. PRESKA, U.S.D.J.